UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 14-CR-10162-MLW |
| CAMERON LACROIX, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S BRIEF

The United States of America, by and through and the undersigned Assistant United States Attorney, respectfully submits this brief in advance of the revocation proceeding concerning Cameron Lacroix ("Lacroix"), on September 12, 2019. The Court has ordered the parties to address (i) whether Chief Judge Saris' findings have a res judicata effect concerning the petition to revoke the supervised release of Lacroix in the above-captioned matter; (ii) whether the facts alleged in the violation report satisfy the elements of any crimes under 18 U.S.C. § 1029 or § 1030, particularly § 1029 (a)(2) or § 1030(a)(4); and (iii) a proposal for resolution of this matter including any sentence the Court should impose.

## BACKGROUND

In 2014, two cases were filed in this District against Lacroix. In the first case, 14-cr-10162-MLW, Lacroix plead guilty to a three-count Information charging him with Access Device Fraud in violation of 18 U.S.C. §§ 1029(a)(3) and 1029(c)(1)(A), and two Counts of Computer Fraud in violation of 18 U.S.C. §§ 1030(a)(2) and 1030(a)(5)(A). The second case, 14-cr-10227-PBS, which was transferred to this District from California pursuant to Federal Rule of Criminal Procedure Rule 20, charged Lacroix in a one-count Information with Intentionally Causing Damage to a Protected Computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and 1030(c)(4)(B)(i). The California case was assigned to the Honorable Patti B. Saris, and the parties filed a motion to

consolidate the two cases, which was denied under the Local Rules of the District of Massachusetts.

On October 27, 2014, this Court accepted Lacroix's plea to the Information in 14-cr-10162-MLW and sentenced Lacroix to 48 months incarceration followed by 36 months of supervised release. On November 25, 2014, in 14-cr-10227-PBS, Chief Judge Saris accepted Lacroix's plea and adopted the parties's recommendation of a concurrent sentence of 48 months in prison and 36 months of supervised release. Lacroix was released from custody and began his term of supervised release on June 9, 2017.

On or about January 24, 2019, the U.S. Probation Department filed two separate revocation petitions, one in each action, based upon the same underlying alleged violations. A revocation hearing in 14-cr-10227-PBS was held on April 25, 2019 and was continued on May 10, 2019. At the conclusion of that hearing, Chief Judge Saris found Lacroix in violation of Conditions I, III, and IV of his supervised release, and sentenced him to a term of 9 months incarceration followed by 3 months of supervised release. On May 28, 2019, Lacroix filed a Notice of Appeal as to the judgment of revocation.

## ARGUMENT

### A.  This Court May Impose an Additional Sentence Based on Lacroix's Violation of Supervised Release in this Case Because the Double Jeopardy Clause and Res Judicata Do No Apply

This Court may, if it chooses to do so, impose a sentence based upon a revocation of Lacroix's supervised release in 14-cr-10162-MLW. The Supreme Court has stated that it "attribute[s] postrevocation penalties to the original conviction." *Johnson v. United States*, 529 U.S. 694, 701 (2000). 18 U.S.C. § 3583(a) provides that supervised release is a part of the original sentence imposed by the sentencing court. 18 U.S.C. § 3583(a); *see also United States v. Dees*, 467 F.3d 847, 853 (3d Cir. 2006). "When read as such, a revocation sentence should be seen as

part of the initial sentence, even when the same act triggers multiple revocations." *United States v. Mizwa*, 762 F. App'x 100, 104 (3d Cir. 2019)(quoting *Dees*, 467 F.2d at 853); *see United States v. Soto-Olivas*, 44 F.3d 788, 790 (9th Cir. 1995) ("the entire sentence, including the period of supervised release, is the punishment for the original crime, and 'it is the original sentence that is executed when the defendant is returned to prison after a violation of the terms of his release.'")(quoting *United States v. Paskow*, 11 F.3d 873, 881 (9th Cir. 1993)).

Double Jeopardy concerns do not prevent the Court from exercising its discretion of imposing an additional sentence should it chose to do so. The Court has explicit authority under 18 U.S.C. § 3584(a) to impose a consecutive sentences upon revocation of concurrent terms of supervised release. *See United States v. Clark*, 984 F.2d 319 (9th Cir. 1993) (holding that a defendant who was on probation and supervised release for separate offenses could be re-sentenced consecutively for the same conduct that led to his probation and supervised release violation without implicating double jeopardy); *United States v. Jones*, 143 F. App'x 521, 522 (4th Cir. 2005) (judge revoked defendant's supervised release in two cases and imposed concurrent 24-month prison terms, another judge adopted the first judge's findings, revoked supervised release in a third case, and imposed a concurrent 24-month prison term).

Similarly, the principle of res judicata does not prevent the Court from exercising its authority to impose an additional sentence for Lacroix's supervised release violation in the matter before this Court. Res judicata applies when there exists between two separate cases (1) identity or privity between the parties, (2) a final judgment on the merits in the first case, and (3) identity of claims. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *United States v. Flemmi*, 283 F. Supp. 2d 400, 405 (D. Mass. 2003). Stated differently, res judicata "means that a valid final adjudication of a claim precludes a second action on that claim or any part of it." *Combe*

3

*v. Feather*, No. C12-843-RSM-JPD, 2012 U.S. Dist. LEXIS 159139, at \*12-13 (W.D. Wash. Aug. 8, 2012).

As a preliminary matter, there has been no final adjudication concerning Lacroix's supervised release violation in 14-cr-10227-PBS, because Lacroix has appealed the judgment surrounding his supervised release violation. Second, there can be no identity of claims because a revocation sentence is treated as part of the initial sentence. *See Mizwa*, 762 F. App'x at 104; *Soto-Olivas*, 44 F.3d at 790. "The test to determine the identity of two causes of action for purposes of res judicata is whether the essential or operative facts are the same in both cases." *Cooper v. Principi*, 71 F. App'x 73, 75 (1st Cir. 2003) (citing *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998)). Here, the initial sentences in both cases, before both this Court and Judge Saris, were based on entirely different conduct. While 14-cr-10162-MLW was based on Lacroix's actions in Massachusetts, 14-cr-10227-PBS was based on Lacroix's crimes in California. Although the facts leading to the joint revocation are indeed the same, since those facts triggered revocations in two separate actions, and that the revocation is itself conceptually part of the underlying sentence, res judicata does not preclude appropriate action in the revocation matter before this Court.

Thus, the Court may exercise its discretion to impose an additional term of imprisonment for violation of the supervised release in 14-cr-10162-MLW, and neither Double Jeopardy nor res judicata limits that discretion.

**B.    Lacroix's Conduct Violated Federal Laws, including 18 U.S.C. § 1030 and 18 U.S.C. § 1029**

During the April 25 and May 10, 2019 hearings before Judge Saris, the United States presented evidence that Lacroix's conduct violated the supervised release condition that Lacroix not commit another state or federal crime. Specifically, as to violation IV, on May 10, 2019 the

United States presented evidence that Lacroix developed and executed a scheme to steal money from his employer, in violation of several state and federal laws.

The United States presented this evidence primarily through the testimony of U-Haul investigator Jennifer Amaya[1] and related documentary evidence obtained by U-Haul. Specifically, Ms. Amaya testified that during the relevant time period, Lacroix worked for U-Haul as a general manager. *See Transcript of May 10, 2019 Supervised Release Revocation Hearing* (14-cr-10227-PBS) ("Tr.") at 22:18-25. U-Haul publicly advertises that it will tender a $50 "Reservation Guarantee" payment to customers in the event equipment requested by a customer is unavailable. *Id.* at 7:3-21. In October of 2018, U-Haul's Audit Department notified their Credit Card Processing Department of the application of suspicious refunds to MyVanilla gift cards, managed by Bancorp Bank ("Bancorp"). *Id.* at 7:25-10:4. U-Haul determined that thirty-three different U-Haul employees from thirty-five different U-Haul locations across the country had purportedly initiated the refunds onto the same twelve Bancorp cards, using what appeared to be fictitious customer names. *See id.* at 7:25-14:20. Stated differently, the same twelve cards received refunds from multiple U-Haul locations across the country, which itself would be highly unusual for even just one legitimate customer.[2] *Id.*

In total, approximately, $9,584.02 in refunds were processed to the twelve cards. *See* Exhibit 8. Scott Sande, U-Haul's Director of Data Privacy and Security investigated and determined that each of the reservations associated with the refunds to the Bancorp cards were

---

[1] Ms. Amaya lives and works in another state, and was required to fly to Massachusetts to testify in the proceeding.

[2] For example, Bancorp card number 4420620332236057 received refunds from U-Haul's in Providence, Rhode Island, Phoenix, Arizona, Oceanside, California, Seattle, Washington, and Cincinnati, Ohio.

made via a TOR browser, which rendered the IP addresses untraceable. *Id.* at 15:14-16:5. Further, none of the employee accounts that issued the refunds had password resets, meaning that the person who accessed the accounts was able to determine their passwords. *Id.* at 16:9-18. Together, the pattern of reimbursements, the amounts of the reimbursements, and the fact that all of the reservations were made using an anonymizing technique lead U-Haul to conclude that these were fraudulent reimbursements. *Id.* at 15:10-16:25.

U-Haul then obtained records from Bancorp showing the transactions that were made with the twelve cards that received the fraudulent refunds. Tr., 17:1-18:18. Many showed ATM cash withdrawals and purchases. *Id.* U-Haul reached out to vendors, merchants, and owners of the ATMs to seek video surveillance images. *Id.* at 18:19- 19:8. While many of the merchants did not respond to the requests or provided surveillance images that were unclear, U-Haul ultimately obtained high quality surveillance video footage of an individual they identified as Lacroix withdrawing funds from the Hong Kong Restaurant ATM in Cambridge, Massachusetts. *Id.* at 19:6-8; 20:8-21:19. Based on their investigation, U-Haul planned to terminate Lacroix, but on or about November 17, 2018, he resigned. *Id.* at 22:11-25.

The United States also presented evidence through Paul Lee, the owner of the Hong Kong Restaurant, who described the video surveillance system. Mr. Lee alsoexplained why the time stamps on Hong Kong's video system were different than the time noted on the bank and ATM records. Tr. 48:20-49:15, 54:14-20. During Mr. Lee's testimony, the United States showed a chart that illustrated that, while the date stamp on the Hong Kong surveillance video was not accurate, there was a critical alignment:   both the hours and seconds accompanying the fraudulent transactions lined up with the video evidence.

### i.    Access Device Fraud

Title 18 U.S.C. § 1029(a)(2) makes it a crime to knowingly and with intent to defraud, traffic in or use one or more unauthorized access devices during any one-year period, and by such conduct obtain anything of value aggregating $1,000 or more during that period.  *See* 18 U.S.C. § 1029(a)(2).   The elements are: (1) that the defendant used an access device; (2) that the defendant used it without authorization and thereby obtained something of value aggregating at least $1,000 during a one year period; (3) that defendant acted knowingly, willfully and with the intent to defraud; (4) that defendant's conduct affected interstate or foreign commerce.

The term "access device" means "any card, plate, code, account number, . . . personal identification number, . . .  or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)."  18 U.S.C. § 1029(e)(1); *see United States v. Williams*, 790 F.3d 1240, 1249-50 (11th Cir. 2015) ("[T]he definition of 'access device' plainly includes account numbers…"). More specifically, an "unauthorized access device" is "any access device that is lost, stolen, expired, revoked, canceled, or *obtained with intent to defraud.*"  18 U.S.C. § 1029(e)(3)(emphasis added).  "Intent to defraud has often been defined as the specific intent to deceive or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self."  *United States v. Pierre*, 825 F.3d 1183, 1194 (11th Cir. 2016)(citing *United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005)); *United States v. Peden*, 556 F.2d 278, 280 (5th Cir. 1977).

The supervised release hearings in 14-cr-10227-PBS on April 25 and May 10, 2019 established that Lacroix used at least 12 different Bancorp credit cards to receive fraudulent reimbursements and to fund approximately $9,500 in purchases.  The Bancorp cards are access

devices within the meaning of the statute. *See* 18 U.S.C. § 1029(e)(1). Lacroix obtained the

Bancorp credit cards with intent to defraud and ultimately, to enable him to load U-Haul funds

onto the cards in order to enrich himself. Lacroix's fraud affected interstate commerce, because

among other reasons, an out-of-state institution issued the access devices. *See United States v.*

*Delgado*, 124 Fed. Appx. 694, 696 (2d Cir. 2005). The evidence introduced at the prior supervised

release revocation hearing established by a preponderance of the evidence standard Lacroix's

conduct violated § 1029(a)(2).

### ii.    Computer Fraud and Abuse Act

Title 18 U.S.C. § 1030(a)(4) provides that whoever "knowingly and with intent to defraud,

accesses a protected computer without authorization, or exceeds authorized access, and by means

of such conduct furthers the intended fraud and obtains anything of value, unless the object of the

fraud and the thing obtained consists only of the use of the computer and the value of such use is

not more than $5,000 in any 1-year period . . . shall be punished as provided in subsection (c) of

this section." The term "without authorization" is not defined by statute.

Again, the evidence introduced at the prior supervised release revocation hearing

established by a preponderance of the evidence standard that Lacroix's conduct violated §

1029(a)(4). Here, under either theory, Lacroix's conduct violates 18 U.S.C. § 1030 (a)(4) by a

preponderance of the evidence. While the point was not specifically discussed during the hearing,

the testimony of Ms. Amaya, and the fact that Lacroix was fired when his conduct was uncovered,

clearly supports the obvious inference:    Lacroix was not authorized to access accounts belonging

to other U-Haul employees to alter customer reservation data or to issue reimbursements. Further,

he was not authorized to exceed his computer permissions as a U-Haul manager to make the

changes necessary to effectuate the refunds. Testimony from Jennifer Amaya of U-Haul

confirmed that the accounts had not been reset, and therefore it follows that Lacroix had to have

obtained the employee's passwords and accessed the accounts surreptitiously.  *United States v.*

*Marino*, 833 F.3d 1, 5 (1st Cir. 2016).  While the government would likely not have charged

Lacroix for violating the Computer Fraud and Abuse Act based on this conduct (and would have

been more likely to consider Wire Fraud charges pursuant to 18 U.S.C. § 1343), the conduct does

meet the elements of that statute..

### iii.    Government's Recommendation

The rules of evidence do not apply to a supervised release revocation proceeding.  *United*

*States v. Smith*, 500 F.3d 27, 31 (1st Cir. 2007).  This Court can consider any evidence presented

so long as the evidence has an indicia of reliability*United States v. Marino*, 833 F.3d 1, 5 (1st Cir.

2016).  The sworn testimony, which was subject to cross-examination, and the documentary and

electronic evidence, which was subject to challenge by the defense before Chief Judge Saris  has

the indicia of reliability and should be considered by this Court.  The United States recommends

that this Court adopt the findings of Chief Judge Saris, and further sentence Lacroix to 18 months

in prison, to be served concurrently to the 9-month sentence previously imposed by Judge Saris.

While the United States previously recommended a sentence before this Court of 9 months

to be served concurrently with the sentence imposed by Chief Judge Saris, the United States has

revisited the recommendation after the Court alerted the parties to the provision in the plea

agreement in 14-cr-10162-MLWt.  The plea agreement provides that if Lacroix "violates the

conditions of supervised release by committing computer fraud (in violation of 18 U.S.C. § 1030)

or access device fraud (in violation of 18 U.S.C. §1029), they [the Parties] will jointly recommend

that the Court impose the maximum penalty available for this violation..."  The Guideline

sentencing range based upon Lacroix's violations is 12-18 months.  The maximum term of

incarceration is 2 years, as the offense that resulted in the term of incarceration is a class C felony. 18 U.S.C. § 3583(e)(3).

Because the evidence before the Court establishes by a preponderance that Lacroix's conduct violated both 18 U.S.C. §§ 1029 and 1030, the United States recommends a sentence of 24 months to be served concurrent with the remainder of Lacroix's 9 month sentence.  The United States believes that the Court has sufficient evidence before it to make this determination based upon the transcripts, exhibits, and briefing in 14-cr-10227-PBS, without again necessitating the appearance of civilian witnesses.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

Dated: September 5, 2019                    By:      */s/ Mackenzie Queenin*
                                                      Mackenzie A. Queenin
                                                      Assistant United States Attorney

CERTIFICATE OF SERVICE

I, Mackenzie A. Queenin, hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Date: September 5, 2019                              /s/      *Mackenzie Queenin*
                                                     Assistant United States Attorney

11