UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 14-cr-10162-MLW |
| ) | |
| CAMERON LACROIX, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**_PRO SE_ EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

The United States of America respectfully submits this opposition to the defendant Cameron Lacroix's *pro se* emergency motion for compassionate release (the "Defendant's Motion"). *See* ECF No. 71. First, the defendant has not exhausted his administrative remedies. But even if this Court were to find to the contrary, the defendant's cited reasons for release are neither extraordinary nor compelling. *See* 18 U.S.C. § 3582(c). While the government is sensitive to the health risks posed by the COVID-19 pandemic, particularly to those in custodial settings, the defendant's motion should be denied.

**I.    Background**

In 2014, two cases were filed in this District against Lacroix. In the first case, 14-cr-10162-MLW, Lacroix pled guilty to a three-count Information charging him with Access Device Fraud in violation of 18 U.S.C. §§ 1029(a)(3) and 1029(c)(1)(A), and two Counts of Computer Fraud in violation of 18 U.S.C. §§ 1030(a)(2) and 1030(a)(5)(A). The second case, 14-cr-10227-PBS, which was transferred to this District from California pursuant to Federal Rule of Criminal Procedure Rule 20, charged Lacroix in a one-count Information with Intentionally Causing Damage to a Protected Computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and 1030(c)(4)(B)(i). The California case was assigned to the Honorable Patti B. Saris, and the parties filed a motion to

consolidate the two cases, which was denied under the Local Rules of the District of Massachusetts.

On October 27, 2014, this Court accepted Lacroix's plea to the Information in 14-cr-10162-MLW and sentenced Lacroix to 48 months incarceration followed by 36 months of supervised release. On November 25, 2014, in 14-cr-10227-PBS, Judge Saris accepted Lacroix's plea and adopted a joint recommendation of a concurrent sentence of 48 months in prison and 36 months of supervised release. Lacroix was released from custody and began his term of supervised release on June 9, 2017.

On or about January 24, 2019, the U.S. Probation Department filed two separate revocation petitions, one in each action, based upon the same underlying alleged violations. A revocation hearing in 14-cr-10227-PBS was held on April 25, 2019 and was continued on May 10, 2019. At the conclusion of that hearing, Judge Saris found Lacroix in violation of Conditions I, III, and IV of his supervised release, and sentenced him to a term of 9 months incarceration followed by 3 months of supervised release. Notably, violation IV related to Lacroix developing and executing a scheme to steal money from his employer, in violation of several state and federal laws. On or about September 12, 2019, this Court sentenced Lacroix to an additional 15 months incarceration, to be served consecutively to the sentence imposed by Judge Saris in 14-cr-10227-PBS. According to FMC Devens, Lacroix's projected release date is April 5, 2021 and he is scheduled to be released to Coolidge House on February 9, 2021.

On or about May 19, 2020[1], the defendant requested compassionate release from the Bureau of Prisons, alleging that he is "Medically Debilitated (completely disabled, unable to

---

[1] The defendant states he filed a request for compassionate release on April 5, 2020, but it went unanswered. *See* Defendant's Motion, at 4; Exhibit C. The defendant's instant request for compassionate release is dated April 28, 2020. *See id.*, Exhibit B. The defendant notes that the

perform activities of daily living and totally confined to a bed or chair OR only capable of limited self-care and confined to a bed or chair more than 50% of waking hours)[.]" *See* Defendant's Motion, Exhibit B.  In support, the defendant stated that the "pandemic is a threat to me and my wife especially because she has no caregiver as her family resides in another country." *Id.*  The defendant also noted that since he is imprisoned the pandemic makes him more susceptible to contracting COVID-19.  *See* Defendant's Motion, Exhibit A-1.

The FMC Devens Warden denied Lacroix's request on June 10, 2020, noting that a review of Lacroix's medical records indicated his "circumstances are not extraordinary or compelling. It has been determined that you do not have a deteriorating medical condition that would diminish your ability to function within a correctional setting."  *See* Defendant's Motion, Exhibit D-1.  Lacroix then appealed the Warden's decision, and his appeal was similarly denied.  *See* Exhibit D-3.  On September 8, 2020, Lacroix's subsequent appeal to the Regional Director was rejected because part of the appeal was illegible.  *See* Defendant's Motion, Exhibit E.

On January 13, 2021, Lacroix filed the instant *pro se* emergency motion for compassionate release, requesting this Court grant him release under 18 U.S.C. § 3582(c)(1)(A)(i), stating "extraordinary and compelling reasons" warrant a reduction in his sentence.[2]  ECF No. 71. Specifically, Lacroix, who is 32 years old, cites the threat of the COVID-19 pandemic, a lack of adequate dental care, a history of respiratory illnesses, a lack of access to programming, as warranting early release.  *See id.* at 6-9.

---

form was filled out incorrectly and that he was directed to send it back in on May 13, 2020. *See id.*, Exhibit C.  The FMC Devens Warden responded on June 10, 2020, citing receipt of the defendant's request on May 19, 2020.  *See id.*, Exhibit D-1.

[2] The motion is dated January 8, 2021, although it was not filed on ECF or otherwise made available to the government until January 13, 2021.

3

## II.     Statutory Framework

"[T]here is no 'inherent authority' for a district court to modify a sentence as it pleases; indeed a district court's discretion to modify a sentence is an exception to [§ 3582's] general rule [barring modification]." *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009). A district court's authority to modify a defendant's sentence is "narrowly circumscribed" and absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Those statutory exceptions are narrow. *United States v. Lepore*, 304 F. Supp. 2d 183, 191 (D. Mass. 2004) ("Whereas judicially imposed exhaustion requirements are prudential and subject to a number of exceptions, statutory requirements are jurisdictional, and absent statutory specification, are subject to very few exceptions."). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is also narrow.

First, compassionate release requires exhaustion of administrative remedies. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. *See* 18 U.S.C. § 3582(c)(1)(A).

Second, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). Although medical conditions may constitute "extraordinary and compelling reasons" warranting release, according to the Sentencing Guidelines and this Court, a "medical condition qualifies as an 'extraordinary and compelling' reason for release" in the context of the COVID-19 pandemic only "if it is a 'serious physical or medical condition,' . . . that is severe enough to 'substantially diminish[ ] the ability

4

of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *United States v. Mackenzie*, 458 F. Supp. 3d 53, 55 (D. Mass. 2020) (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)). Conversely, "[a] generalized risk of infection is insufficient" to satisfy a defendant's burden. *Id.*

Third, even if a defendant has demonstrated "extraordinary and compelling reasons" warranting early release, he must also demonstrate: (i) "he is not a danger to the safety of any other person or the community;" and (ii) that "the sentencing factors in 18 U.S.C. § 3553(a) justify release." *United States v. Boulas*, No. 17-10351-ADB, 2020 WL 5096712, at *2 (D. Mass. Aug. 28, 2020) (denying compassionate release motion by Devens inmate where health conditions were adequately "managed by [] medications"). Notably, a defendant bears the burden of proving that he is entitled to compassionate release. *See, e.g., United States v. Amparo*, Crim. No. 19-10004-ADB, 2020 WL 6520989, at *2 (D. Mass. Nov. 4, 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

### III. Lacroix Has Not Properly Exhausted His Administrative Remedies as The Issues Cited in His Emergency District Court Filing Are Broader than Those Presented to BOP

Some courts have held that in order to properly exhaust administrative remedies, the administrative complaint must raise the same claims asserted in the federal court filing. *See Gadra-Lord v. Doe*, 736 F. App'x 30, 32 (3d Cir. 2018) (prisoner failed to exhaust administrative remedies even though he filed numerous prison grievances because none addressed the subject of the federal court complaint)."); *United States v. McNair*, No. 04-267 (FLW), 2020 WL 5036201, at *3 (D.N.J. Aug. 26, 2020) (the administrative request must be based on the same medical conditions; "the regulations require the inmate to identify the compelling reasons justifying release."); *but see United States v. Torres*, 464 F. Supp. 3d 651, 655 (S.D.N.Y. 2020) ("there is no

indication whatsoever in the statutory text that issue exhaustion is required"). "One of the purposes for requiring prisoners to exhaust their administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to address the issue." *United States v. Valenta*, No. cr 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020)(citing *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)). Here, Lacroix's compassionate release request only references the COVID-19 pandemic, not his dental problems, history of respiratory issues[3], or the alleged lack of programming. As such, Lacroix's motion before the Court, which cites all four factors, is not properly before the Court.

    **IV.**    **Lacroix's Medical Condition Does Not Constitute an Extraordinary and Compelling Reason to Warrant Compassionate Release**

Even if administrative exhaustion were not an issue, Lacroix nevertheless does not meet the criteria for compassionate release, as he fails to set forth extraordinary and compelling reasons to justify his release from custody. The Sentencing Commission's policy statement provides that, in order for an inmate to be released because of a medical condition, that inmate must be suffering from a "terminal illness," or from "a serious physical or medical condition, […] a serious functional or cognitive impairment, […] or […] experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13 app. note 1. These conditions qualify as extraordinary and compelling reasons however only when they "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

---

[3] The defendant concedes he does not suffer from any conditions that are CDC risk factors.

First, Lacroix's claim fails on its face because the mere risk of COVID-19 alone is not a condition that constitutes an extraordinary and compelling reason for compassionate release. Lacroix relies on the speculative prospect of contracting COVID-19, he does not allege that he has COVID-19. This is not sufficient. Indeed, if that were enough, every prisoner could seek to have his or her sentence immediately suspended and ordered released.

The government is sensitive to the risk that COVID-19 poses in custodial settings, particularly in facilities like FMC Devens that have experienced a significant number of positive cases recently.[4] But the BOP generally—and FMC Devens specifically—have taken aggressive steps to limit the spread of COVID-19. *See, e.g.*, *Boulas*, 2020 WL 5096712, at *2 (noting that "FMC Devens appears to be taking appropriate precautions to protect the health of its inmates"). Further, the defendant is not alleging he has COVID-19 or is symptomatic. *See also United States v. Ilarraza*, 460 F. Supp. 3d 120, 122 (D. Mass. 2020) (Zobel, J.) (denying motion for compassionate release by inmate in BOP facility with "one of the highest concentrations of positive COVID-19 cases" because, in part, "neither he nor his cell mate have displayed any symptoms").

Both the BOP and courts in this District have not hesitated to grant compassionate release where warranted in order to reduce prison populations so that young, healthy inmates like Lacroix can safely serve their remaining sentences. *See, e.g.*, *United States v. Rachal*, 470 F. Supp. 3d 63 65-66 (D. Mass. 2020) (granting compassionate release to 68-year-old defendant who had served over half of sentence and was detained in facility with the highest rate of infection in the country).

---

[4] With a capacity of nearly 1,100 inmates, FMC Devens currently has 41 confirmed active cases of COVID-19 among inmates as of January 21, 2021. *See* https://www.bop.gov/coronavirus/# (last accessed Jan. 20, 2021). There are also 14 active cases of COVID-19 among FMC Devens staff. *Id.*

Second, the defendant presents no evidence of a serious medical condition and in fact concedes he does not suffer from any CDC risk factors. *See* Defendant's Motion, at 13-14. The dental issues on which he bases his claim do not constitute extraordinary and compelling reasons to warrant a sentence reduction. Lacroix argues that a root canal and/or filling dental procedure is unavailable to him due to the confines of the COVID-19 pandemic. *See* Defendant's Motion, at 8. The government does not dispute that the defendant seemingly has dental issues. *See* Defendant's Motion, Exhibit H-1, H-2, H-3. Nor does the government dispute that BOP appears to have informed the defendant that the only available option at this time is to extract the relevant tooth. *See* Exhibit H-2. But the defendant has not met his burden to prove these dental issues constitute an extraordinary and compelling reason to order his release. Additionally, the defendant does not argue, because he cannot, that the dental issues increase his susceptibility to contracting or combatting COVID-19.

Lacroix also notes that he has a history of respiratory issues, including a persistent cough, which presented itself prior to the inception of the COVID-19 pandemic. *See* Defendant's Motion, Exhibit K-1, K-2. The defendant does not allege these issues are ongoing. Courts in this District have consistently denied motions for compassionate release filed by older defendants, located in the same facility, without evidence of a condition that, according to the CDC, poses an increased risk of severe illness from COVID-19. *See, e.g., United States v. Rose,* No. 11-10062-NMG, 2020 WL 6550573, at *1 (D. Mass. Nov. 6, 2020) (denying early release motion filed by Devens inmate with high blood pressure, prediabetes, and neutropenia, because "[h]e is 39 years old and does not suffer from a condition that places him at such an increased risk of severe illness from COVID-19 to warrant release"); *Boulas,* 2020 WL 5096712, at *2 (denying compassionate release motion filed by 48-year-old Devens inmate with hypertension and high cholesterol).

Although not a health condition, the defendant also alleges a lack of access to programming, noting that his release to Coolidge House is essential to his community reintegration. *See* Defendant's Motion, at 10-12. The defendant alleges he was set to be released to the Coolidge House in early January, but that the date was pushed back due to the pandemic.[5] *See* Defendant's Motion, at 9-11. As noted above, FMC Devens reports that the defendant is now scheduled to be released to the Coolidge House on February 9, 2021.

Ultimately, given that the defendant cannot satisfy the first two prongs of the legal analysis set forth in Part II above, the Court need not analyze the question of whether the defendant is a danger to the community or whether the sentencing factors in 18 U.S.C. § 3553(a) justify release. The government does note however, that the defendant is a recidivist in the sense that he is serving a sentence on a supervised release violation stemming, in part, from the commission of a new crime.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Lacroix's Emergency Motion for Compassionate Release.

Respectfully submitted,

ANDREW E. LELLING<br>
United States Attorney

Dated: January 21, 2021          By:    */s/ Mackenzie A. Queenin*<br>
                                                     Mackenzie A. Queenin<br>
                                                     Assistant United States Attorney

---

[5] A BOP attorney has informed AUSA Queenin that there was a mix-up in the halfway house date originally provided to Lacroix by the Regional Reentry Manager's Office. The BOP attorney further stated that FMC Devens has been on a "movement moratorium" due to the pandemic, so Lacroix would not have been able to transfer to the Coolidge House, even if the early January release date was correct.

CERTIFICATE OF SERVICE

      I, Mackenzie A. Queenin, hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  A copy was also sent to the defendant at the following address:

Cameron Lacroix
25706-038
PO Box 879
Ayer, MA 01432


Date: January 21, 2021                                          /s/ *Mackenzie A. Queenin*
                                                                           Assistant United States Attorney